**Mont. LBF 8. MOTION TO MODIFY STAY; AND NOTICE.**
Mont. LBR 4001-1(a)

Jason J Henderson
Mackoff Kellogg Law Firm
38 2nd Ave E
Dickinson, ND 58601
Telephone: 701-227-1841
Facsimile: 701-225-6878
jhenderson@mackoff.com
MT Bar No. MT - 11414
Attorney for Federal National Mortgage Association ("Fannie Mae")

### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In Re | ) Case No. 18-60041 |
| | ) |
| CHRISTOPHER STEVEN HAYWOOD | ) |
| | ) |
| SUSAN LIN HAYWOOD | ) |
| | ) |
| Debtors. | ) |

### MOTION TO MODIFY STAY; AND NOTICE

The Motion of Federal National Mortgage Association ("Fannie Mae")

("Creditor) respectfully represents:

 1. The Debtors filed a Petition in this Court under Chapter 13 of the

Bankruptcy Code on January 21, 2018.

 2. Creditor is the holders of a secured claim against the Debtors, and

pursuant to Mont. LBR 4001-1, provides the following information:

(a)    The present balance owing to Creditor, excluding any precomputed

interest or other unearned charges are as of June 28, 2018, as follows:

| | |
|---|---|
| Unpaid Principal Balance | $87,161.89 |
| Unpaid Interest | $1,947.86 |
| Escrow Overdraft | $1,648.01 |
| Late Charges | $107.75 |
| Legal/Attorney Charges | $350.00 |
| Property Inspection Costs | $105.00 |
| Private Mortgage Insurance | $75.82 |
| Minimum Outstanding Obligations | $91,396.33 |

(b)    The date upon which the subject debt was incurred was October 24,

2003.

(c)    Creditor holds a security interest or lien upon the following described

property of the estate:

Parcel C in the NW 1/4 of the SW 1/4 of Section 34, Township 85 North,
Range 23 West of the 5th PM, Iowa, as shown in the Plat of Survey,
recorded on September 29, 2003 as Inst. No. 03-20550 on Slide 182,
Page 1 of the Story County Records (the "Property").

(d)    The nature of Creditor's security interest, the date upon which the

security interest was obtained, and the date upon which the security

interest was perfected are as follows:

Creditor is a secured creditor whose claim is secured by the

Property, as evidenced by that certain Mortgage dated October 24, 2003

(the   "Mortgage").  The lien created by the Mortgage was perfected by

recording of the Mortgage in the office the Clerk and Recorder of Story

County on October 24, 2003 under Document No. 03-22216.  All rights

and remedies under the Mortgage have been assigned to the Creditor

pursuant to an assignment of Mortgage, attached hereto as an Exhibit.

Creditor has attached to this Motion copies of all security agreements, financing statement, titles, and other perfection documents necessary to prove the validity of its security interest.

(e)     Creditor has standing to file this motion on the following grounds: Creditor is an entity entitled to enforce the promissory note that the Debtors have executed and delivered or with respect to which the Debtors is/are otherwise obligated.

(f)     A description of Creditor's collateral, including its location, is as follows:

The Property and all other collateral described in the Mortgage, a copy of which is attached.

(g)     The fair market value of Creditor's collateral is $115,000.00.

(h)     A description of, and the amounts due upon, any other security interests are as follows:

(i)     If the Debtor is in default, the number of defaulted installments and the total amount in default are as of July 01, 2018, as follows:
See paragraph (j) below for a listing of postpetition defaulted installments that have not been made.

(j)     If the Creditor alleges a postpetition payment default by the Debtor the amount and date of the payments the Debtor is alleged to have failed to make are as of July 01, 2018, as follows:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Amounts Delinquent |
|---|---|---|---|---|
| 5 | 03/01/2018 | 07/01/2018 | $682.70 | $2,730.80 |

Less postpetition partial payments (suspense balance): ($)0.00

Total $3,413.50

Creditor attests that it responded promptly and thoroughly to the trustee's or to the Debtor's reasonable requests for account information.

(k)     This Motion is made under and pursuant to the following subsection of 11 U.S.C. § 362: (d).

(l)     Other facts which are relevant in determining whether relief should be granted are as follows:

In addition to the other amounts due to Creditor reflected in Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Creditor has also incurred $850.00 in legal fees and $181.00 in costs.  Creditor reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

3.     Creditor further represents that in the event the Court grants this Motion, Creditor will seek Foreclosure and liquidation of the above-described collateral in accordance with applicable nonbankruptcy law.  Upon disposition of such collateral, Creditor will account for all proceeds to the Court and trustee, if applicable, and agrees to turn over any proceeds in excess of Creditor's allowed secured claim to the Court, and trustee, if applicable.

4.     Creditor requests that in the event the Court grants this Motion, that the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

WHEREFORE, Creditor moves the Court to grant this Motion to Modify Stay, and to grant such relief as the Court may deem appropriate.

Dated July 26, 2018.

MACKOFF KELLOGG LAW FIRM
38 2nd Ave E
Dickinson, ND 58601


Jason J Henderson
Attorney for Federal National Mortgage Association
("Fannie Mae")

### NOTICE OF OPPORTUNITY TO RESPOND
### AND REQUEST A HEARING

1.    **If you object to the motion, you must file a written responsive pleading and request a hearing within fourteen (14) days of the date of the motion.** The objecting party shall schedule the hearing and shall include in the caption of the responsive pleading in bold and conspicuous print the date, time and location of the hearing by inserting in the caption the following:

> **NOTICE OF HEARING**
> **Date:** _____
> **Time:**         _____
> **Location:** _____

2.    This contested matter shall be scheduled for hearing for the next hearing date scheduled in the division within which the case is filed. The date, time and location of the hearing can be obtained from the Clerk of Court or from the Court's website at www.mtb.uscourt.gov. In the event such scheduled hearing date is thirty (30) days beyond the filing date of the motion for relief, then a preliminary hearing within such thirty (30) day period shall be scheduled by the responding party after such party contacts the Clerk of Court to confirm the preliminary telephone hearing date and time, which shall be set forth in the response.

3.    **If you fail to file a written response to the above Motion to Modify Stay with the particularity required by Mont. LBR 4001-1(c), and request a hearing, within fourteen (14) days of the date of this Notice,** with service on the undersigned and all parties entitled to service under all applicable rules, **then your failure to respond or to request a hearing will be deemed an admission that the motion for relief should be granted without further notice or hearing.**

**DATED July 26, 2018.**

                    MACKOFF KELLOGG LAW FIRM
                    38 2nd Ave E
                    Dickinson, ND 58601

                    _____
                    Jason J Henderson
                    Attorney for Creditor

## CERTIFICATE OF MAILING

I, the undersigned, Jason J Henderson do hereby certify, under penalty of perjury that

a copy of the within and foregoing Motion to Modify Stay and Notice was sent by first class

mail postage prepaid on the July 26, 2018, Dickinson, North Dakota, and directed to the

following:

THE UNITED STATES TRUSTEE
ECF EMAIL

MONTANA DEPARTMENT OF REVENUE
OFFICE OF LEGAL AFFAIRS
MITCHELL BUILDING
HELENA, MT 59620

JULIANE E LORE
BANKRUPTCY ATTORNEY
EFC EMAIL

ROBERT G. DRUMMOND
BANKRUPTCY TRUSTEE
ECF EMAIL

CHRISTOPHER STEVEN HAYWOOD
429 18TH ST. W.
BILLINGS, MT 59102

SUSAN LIN HAYWOOD
429 18TH ST. W
BILLINGS, MT 59102

Jason J Henderson
Attorney for Federal National Mortgage Association
("Fannie Mae")

Parcel No. █████████

_____ [Space Above This Line for Recording Data] _____

**Original Principal Amount: $   94,090.00**          Loan No. ████████

# LOAN MODIFICATION AGREEMENT
### (Providing for Step Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **19TH** day of **OCTOBER, 2009**  ,
between   **TAMI L HAYWOOD**

("Borrower") and **JPMorgan Chase Bank, as further defined in the Addendum, which is attached hereto and
incorporated herein****                                      ("Lender"),

amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), and
Timely Payment Rewards Rider, if any, dated **OCTOBER 27, 2003**                    and recorded in

, of the   **Official**   Records of

(Name of Records)

**STORY COUNTY, IOWA**                              , and (2) the Note bearing the same date as, and

(County and State, or other jurisdiction)

secured by, the Security Instrument, which covers the real and personal property described in the Security
Instrument and defined therein as the "Property", located at

**15650 590TH AVE, ROLAND, IOWA 50236**                                           ,

(Property Address)

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument          **Form 3162**  6/06 (rev. 01/09)
Modified by First American Loan Production Services                                            *(page 1 of 5)*
First American Real Estate Solutions LLC                                                        **IOWA**

████████████████

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF;

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of NOVEMBER 1, 2009       , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $      107,041.09      consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance for the first five years at the yearly rate of 3.000000 % from NOVEMBER 1, 2009       , and Borrower promises to pay monthly payments of principal and interest in the amount of $      521.84      beginning on the  1ST day of DECEMBER, 2009       . During the sixth year, interest will be charged at the yearly rate of  4.000000  % from NOVEMBER 1, 2014       , and Borrower shall pay monthly payments of principal and interest in the amount of $      567.98      beginning on the  1ST day of DECEMBER, 2014       . During the seventh year and continuing thereafter until the Maturity Date (as hereinafter defined), interest will be charged at the yearly rate of  4.625000  %, from NOVEMBER 1, 2015  , and Borrower shall pay monthly payments of principal and interest in the amount of $      596.59      beginning on the  1ST      day of DECEMBER, 2015      and shall continue the monthly payments thereafter on the same day of each succeeding month until principal and interest are paid in full. If on NOVEMBER 01, 2033 , (the "Maturity Date"), Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument          Form 3162  6/06 (rev. 01/09)
Modified by First American Loan Production Services                                                              (page 2 of 5)
First American Real Estate Solutions LLC                                                                                   IOWA

4.   Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

   (b)   all terms and provisions of any adjustable rate rider or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.   Borrower understands and agrees that:

   (a)   All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b)   All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

   (c)   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

   (d)   All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

   (e)   Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

LOAN MODIFICATION AGREEMENT- Single Family - Fannie Mae Uniform Instrument
Modified by First American Loan Production Services
First American Real Estate Solutions LLC

Form 3162   6/06 (rev. 01/09)
(page 3 of 5)
IOWA

WASHINGTON MUTUAL BANK

Name:   PATRICK MCGOARTY                                         (Seal)
Its:   VICE PRESIDENT                                            - Lender

TAMI L HAYWOOD                                                  (Seal)
                                                                - Borrower

_____                       (Seal)
                                                                - Borrower

_____                       (Seal)
                                                                - Borrower

_____                       (Seal)
                                                                - Borrower

_____                       (Seal)
                                                                - Borrower

_____                       (Seal)
                                                                - Borrower

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument    Form 3162  6/06 (rev. 01/09)
Modified by First American Loan Production Services                                       (page 4 of 5)
First American Real Estate Solutions LLC                                                  IOWA

_____ [Space Below This Line for Acknowledgments] ▮▮▮▮▮

STATE OF _Iowa_                          COUNTY OF _Poxwe_

The foregoing instrument was acknowledged before me this _21st Oct 09_ _____ by
**TAMI L HAYWOOD** _____

_____

_____

Signature of Person Taking Acknowledgment _Cathy A. Sward_

Printed Name _Cathy A. Sward_

Title or Rank _____

Serial Number, if any _____

```
CATHY A. SWARD
COMMISSION NO. 224172
MY COMMISSION EXPIRES
08 - 24 - 11
IOWA
```

### LENDER ACKNOWLEDGMENT

STATE OF _Florida_                        COUNTY OF _dual_

The foregoing instrument was acknowledged before me this _Oct 27, 89_ _____ by
**PATRICK MCGOARTY** _____, the **VICE PRESIDENT**
of _Chase_ _____

a _Notar_ _____

_____, on behalf of said entity.

Signature of Person Taking Acknowledgment _Robert Slater_

ROBERT SEAN SLATER                    Printed Name _Robert Slater_
Notary Public, State of Florida
My comm exp. May 18, 2012          Title or Rank _Notary_
Comm. No. DD 789466                Serial Number, if any _78 9466_

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument        Form 3162   6/06 (rev. 01/09)
Modified by First American Loan Production Services                                  (page 5 of 5)
First American Real Estate Solutions LLC                                            IOWA

## ADDENDUM TO LOAN MODIFICATION AGREEMENT

THIS ADDENDUM is made this **19TH** day of **OCTOBER, 2009**      and is incorporated into and shall be deemed to amend and supplement the Loan Modification Agreement made by the undersigned (the "Borrower") in favor of **WASHINGTON MUTUAL BANK**

(the "Lender") and dated the same date as this Addendum (the "Agreement").

The Borrower and the Lender enter into the Agreement with reference to the following stipulated fact:

Pursuant to a Purchase and Assumption Agreement dated September 25, 2008, JPMorgan Chase Bank, National Association acquired loans and certain other assets of Washington Mutual Bank from the Federal Deposit Insurance Corporation acting as receiver, including but not limited to the Note and Security Instrument referenced in the Agreement. Although your loan was acquired by JPMorgan Chase Bank, your loan will continue to be serviced under the name "Washington Mutual" and you will make your payments to Washington Mutual.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Addendum.

_____
Borrower
**TAMI L HAYWOOD**

_____
Borrower

_____
Borrower

_____
Borrower

_____
Borrower

_____
Borrower

FALPS# JPMCB.ADD Rev. 01-15-09            Page 1 of 1

## EXHIBIT A

BORROWER(S):   TAMI L HAYWOOD

LOAN NUMBER: 

LEGAL DESCRIPTION:

ALSO KNOWN AS: 15650 590TH AVE, ROLAND, IOWA 50236

Date:  NOVEMBER 1, 2009
Loan Number:
Lender:     WASHINGTON MUTUAL BANK

Borrower:  TAMI L HAYWOOD

Property Address:     15650 590TH AVE
                      ROLAND, IOWA 50236

## NOTICE OF NO ORAL AGREEMENTS

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE
PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS
OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

Receipt of Notice. The undersigned hereby admit to having each received and read a copy of this Notice on or before
execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements,
undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those
actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay
repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____                        _____
Borrower                                                                              Date
TAMI L HAYWOOD

_____                        _____
Borrower                                                                              Date

_____                        _____
Borrower                                                                              Date

_____                        _____
Borrower                                                                              Date

_____                        _____
Borrower                                                                              Date

_____                        _____
Borrower                                                                              Date

First American Loan Production Services                                    Notice of No Oral Agreements
©2008 First American Real Estate Solutions LLC

Date: NOVEMBER 1, 2009
Loan Number: ▮
Lender: WASHINGTON MUTUAL BANK

Borrower: TAMI L HAYWOOD

Property Address: 15650 590TH AVE
                  ROLAND, IOWA 50236

## ERRORS AND OMISSIONS
## COMPLIANCE AGREEMENT

In consideration of **WASHINGTON MUTUAL BANK**

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender. Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

_____          _____10/21/09_____
TAMI L HAYWOOD                                          Date

_____          _____
                                                        Date

_____          _____
                                                        Date

_____          _____
                                                        Date

_____          _____
                                                        Date

_____          _____
                                                        Date

First American Loan Production Services                 Errors and Omissions Compliance Agreement
©2008 First American Real Estate Solutions LLC
▮

## COVER SHEET

The following docs need to be imaged on Lender Live under Modification Agreement index. These are **Final Loan Modifications**.

Thanks

WaMu / Chase



INST. NO.
STORY COUNTY, IOWA
FILED FOR RECORD   151
AM   OCT 2 4 2003   PM
SUSAN L. VANDE KAMP, Recorder
REC. FEE $81.00 AUD. FEE $ _____

Prepared By:
Susan M Zillisch
10260 VIKING DRIVE SUITE 1
EDEN PRAIRIE, MN 55344
(877) 844-9068
Return To:
WASHINGTON MUTUAL BANK, FA
P.O. BOX 008043
PETALUMA, CA 94975-8043
FINAL REVIEW AU 052

Cancelled by Judgement
DIANE L. TOTT
Clerk of District Court
STORY COUNTY, IOWA

———— [Space Above This Line For Recording Data] ————

# MORTGAGE
PURCHASE MONEY

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated OCTOBER 24, 2003 , together with all Riders to this document.
(B) "Borrower" is TAMI L. HAYWOOD, A Single Individual AND CHRISTOPHER S. HAYWOOD, WIFE AND HUSBAND

Borrower is the mortgagor under this Security Instrument.

IOWA — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3016 1/01
—6(IA)(0005)
Page 1 of 15      Initials:
VMP MORTGAGE FORMS • (800)521-7291

(C) "Lender" is WASHINGTON MUTUAL BANK, FA ✓

Lender is a FEDERAL SAVINGS BANK
organized and existing under the laws of THE UNITED STATES OF AMERICA
Lender's address is 3883 AIRWAY DRIVE, SANTA ROSA, CA 95403

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated OCTOBER 24, 2008 ✓ .
The Note states that Borrower owes Lender NINETY FOUR THOUSAND NINETY AND
00/100 ✓                                                                         Dollars
(U.S. $    94,090.00 ✓   ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than NOVEMBER 01, 2038 ✓
(E) "Property" means the property that is described below under the heading "Transfer of Rights
in the Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended

Initials: _____

-6(IA)(0005)                        Page 2 of 15                        Form 3016 1/01

from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to Lender, with power of sale, the following described property located in the COUNTY of STORY :

       [Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

~~THE LEGAL DESCRIPTION IS ATTACHED HERETO AS A SEPARATE EXHIBIT AND IS MADE A PART HEREOF.~~

Parcel C in the NW 1/4 of the SW 1/4 of Section 34, Township 85 North, Range 23 West of the 5th PM, Iowa, as shown in the Plat of Survey, recorded on September 29, 2003 as Inst. No. 03-20550 on Slide 182, Page 1 of the Story County Records.



Parcel ID Number: 0234300100
15650 590TH AVE
ROLAND
("Property Address"):

which currently has the address of
          [Street]
[City] , Iowa 50236
          [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Initials: CSH

-6(IA)(0005)          Page 3 of 15          Form 3016 1/01

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payment are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payment in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.

@D-6(IA)(0005)                    Page 4 of 16                    Initials: [initials]  CbH              Form 3016 1/01

Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in

Initials: $\underline{\hspace{1cm}}$ CSH

VMP₆-6(IA)(0005)                                  Page 5 of 15                                  Form 3016 1/01

a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by

Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys'

Initials: _CSH_

—6(IA) (0005)                    Page 7 of 15                    Form 3016 1/01

fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not

Initials: KCSH

increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for

-6(IA) (0005)

Page 8 of 18

Initials:

Form 3016 1/01

damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.

Initials: _CSA_

-6(IA) (0005)                    Page 10 of 15                    Form 3016 1/01

There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as

Initials: _CsH_

if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: csh

-6(IL) (0005)                    Page 12 of 15                    Form 3016 1/01

21A2 NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower relinquishes all right of dower and waives all right of homestead and distributive share in and to the Property. Borrower waives any right of exemption as to the Property.

25. HOMESTEAD EXEMPTION WAIVER. I UNDERSTAND THAT HOMESTEAD PROPERTY IS IN MANY CASES PROTECTED FROM THE CLAIMS OF CREDITORS AND EXEMPT FROM JUDICIAL SALE; AND THAT BY SIGNING THIS MORTGAGE, I VOLUNTARILY GIVE UP MY RIGHT TO THIS PROTECTION FOR THIS MORTGAGED PROPERTY WITH RESPECT TO CLAIMS BASED UPON THIS MORTGAGE.

| Borrower | Date | Borrower                               10/24/03 | Date |
|----------|------|------------------------------------------------|------|
|          |      | TAMI L. HAYWOOD                                 |      |
| Borrower | Date | Borrower                               10/24/03 | Date |
| Borrower | Date | Borrower                                        | Date |
| Borrower | Date | Borrower                                        | Date |

-B(IA)(0005)                    Page 13 of 15                    Form 3016 1/01

26. Redemption Period. If the Property is less than 10 acres in size and Lender waives in any foreclosure proceeding any right to a deficiency judgment against Borrower, the period of redemption from judicial sale shall be reduced to 6 months. If the court finds that the Property has been abandoned by Borrower and Lender waives any right to a deficiency judgment against Borrower, the period of redemption from judicial sale shall be reduced to 60 days. The provisions of this Section 26 shall be construed to conform to the provisions of Sections 628.26 and 628.27 of the Code of Iowa.

IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                                  -Borrower
TAMI L. HAYWOOD

_____ (Seal)
                   -Borrower

_____ (Seal)    _____ (Seal)
           -Borrower                   -Borrower

_____ (Seal)    _____ (Seal)
           -Borrower                   -Borrower

_____ (Seal)    _____ (Seal)
           -Borrower                   -Borrower

-6(IA)(0005)      Page 14 of 15      Form 3016 1/01

STATE OF IOWA, /    STORY /                    County ss:

On this   24ᵗʰ   day of   October 2003 /          , before me, a Notary Public in the
State of Iowa, personally appeared   TAMI L. HAYWOOD / AND CHRISTOPHER S. HAYWOOD /

to me personally known to be the person(s) named in and who executed the foregoing instrument,
and acknowledged that he/she/they executed the same as his/her/their voluntary act and deed.

My Commission Expires:

_____
Notary Public in and for said County and State
TIMOTHY L. GARTIN

> TIMOTHY L. GARTIN
> Commission Number: 185006
> My Commission Expires: 7/10/05

Initials: CSH

−6(IA)(0005)                     Page 15 of 15                     Form 3016 1/01

5NUS,
H90

# NOTE

OCTOBER 24, 2003                    AMES                        IOWA
[Date]                             [City]                        [State]

15650 590TH AVE, ROLAND, IA 50236

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    94,090.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  WASHINGTON MUTUAL BANK, FA

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    7.500   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    1ST    day of each month beginning on    DECEMBER, 2003
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    NOVEMBER 01, 2033
I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   P.O. BOX 660139, DALLAS, TX  75266-0139
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    657.89

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums

MULTISTATE FIXED RATE NOTE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT



-5N (0207)                    Form 3200 1/01
  VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                    Initials



already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5 . 0      % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:



    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

10-24-03

_____ (Seal)
                         -Borrower
TAMI L. HAYWOOD

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

*(Sign Original Only)*

WITHOUT RECOURSE
PAY TO THE ORDER OF

## WASHINGTON MUTUAL BANK, FA

By _____

LIZ PAPKE, VICE PRESIDENT

Instr. Number: 2013-00010241
Recorded: 8/22/2013 at 9:02:32.0 AM
Recording Fee: $7.00
Transfer Tax:
Susan L Vande Kamp ~ Recorder
Story County, Iowa

When Recorded Return To:
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

Document Prepared By:
E.Lance/NTC, 2100 Alt. 19
North, Palm Harbor, FL
34683 (800)346-9152

## ASSIGNMENT OF MORTGAGE

Contact JPMORGAN CHASE BANK, N.A, for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA, 71203, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Mortgage dated 10/24/2003, executed by TAMI L. HAYWOOD AND CHRISTOPHER S. HAYWOOD (grantor) to WASHINGTON MUTUAL BANK, FA (grantee) and recorded in Book n/a, Page n/a or Document # 03-22216 in the office of the Recorder of STORY, Iowa.

This Assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.

This Assignment is intended to further memorialize the transfer that occured by operation of law on September 25, 2008 as authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. S1821 (d)(2)(G)(i)(II)

IN WITNESS WHEREOF, this Assignment is executed on __08 / 19 /2013 (MM/DD/YYYY).
FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA, by JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, its Attorney-In-Fact

By: _Natasha Price_
VICE PRESIDENT

STATE OF LOUISIANA    PARISH OF OUACHITA
On __08 / 19 /2013 (MM/DD/YYYY), before me appeared _Natasha Price_, to me personally known, who did say that he/she/they is/are the VICE PRESIDENT of JPMORGAN CHASE BANK, NATIONAL ASSOCIATION as Attorney-In-Fact for FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

_Angela Ruth Payne_
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

ANGELA RUTH PAYNE
OUACHITA PARISH, LOUISIANA
LIFETIME COMMISSION
NOTARY ID# 60422

```
Instrument:2014- 00003517
Date:May 13,2014 12:10:20P
Rec Fee:        5.00   E-Com Fee:     1.00
Aud Fee:         .00   Trans Tax:      .00
Rec Management Fee:    1.00
Non-Standard Page Fee:       .00
Filed for record in Story County, Iowa
   Susan L. Vanda Kamp, County Recorder
```

When Recorded Return To:
JPMorgan Chase Bank, NA
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Document Prepared By:
E.Lance/NTC, 2100 Alt. 19
North, Palm Harbor, FL
34683 (800)346-9152

Loan No
Reference

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA, 71203, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to FEDERAL NATIONAL MORTGAGE ASSOCIATION, WHOSE ADDRESS IS 14221 DALLAS PARKWAY SUITE 100, DALLAS, TX 75254 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Mortgage dated 10/24/2003, executed by TAMI L. HAYWOOD and CHRISTOPHER S. HAYWOOD (grantor) to WASHINGTON MUTUAL BANK, FA (grantee) and recorded in Book , Page , and/or Document # 03-22216 in the office of the Recorder of STORY County, State of Iowa. .

Dated on 04 /22 /2014 (MM/DD/YYYY)
JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

By: _Latuya M Jackson_
    Latuya M Jackson
    Vice President

STATE OF LOUISIANA , PARISH OF OUACHITA
On 04 /22 /2014 (MM/DD/YYYY), before me appeared _Latuya McJackson_____, to me personally known, who did say that he/she/they is/are the _Vice President__ of JPMORGAN CHASE BANK, NATIONAL ASSOCIATION and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

_Todd C Sylvester_
TODD C SYLVESTER #062367
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

TODD C SYLVESTER
NOTARY PUBLIC # 062367
OUACHITA PARISH LOUISIANA
MY COMMISSION IS FOR LIFE